MARK A. WAKEFIELD AND JOHN F. DAVIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24927, 24928.   Promulgated November 8, 1929.

*Elwood Hamilton, Esq.*, for the petitioners.
*Arthur Carnduff, Esq.*, for the respondent.

TRAMMELL: These are proceedings for the redetermination of deficiencies in income tax for the calendar year 1922. A deficiency in the amount of $837.96 is asserted against the petitioner Mark A. Wakefield, and a deficiency in the amount of $1,116.24 against the petitioner John F. Davis. One issue being common to both cases, they were consolidated for hearing and decision.

The petitioners are individuals, with residence at Shelbyville, Ky., and during the taxable year jointly owned and operated a farm in Shelby County. The issue involved in both cases concerns the question whether the petitioners realized a profit or suffered a loss in the operation of the farm during the year 1922.

The petitioners allege in their pleadings that the total gross receipts from the farm amounted to $2,818.24, and that operating expenses, including depreciation, amounted to $5,243.64, thus showing a loss of $2,425.40, one-half of which was sustained by each petitioner in the amount of $1,212.70. In their briefs the petitioners assert that the gross income was $5,305.98, and expenses $4,440.67, resulting in a profit of $865.31, less depreciation of $2,155.30, or a loss sustained by each petitioner of $645. The respondent disallowed the losses claimed and determined that each petitioner realized a gain of $10.24.

No books of account were kept in connection with the farm business, but all receipts from the sale of farm products or otherwise were deposited to the credit of a joint account in the bank, and all expenditures for the farm were made by checks drawn on this account. During the year 1922 the deposits to the farm account aggregated $5,575.88, which is admitted to constitute gross income, less two loans in the total amount of $280. Thus, the controversy relates to the correct amount of deductible expenses. The expenditures from the farm account for said year totaled $5,525.87, which the petitioners in their briefs contend constitute allowable deduc-

tions for expenses, less a payment of $991.20, on principal of a note for borrowed money and $94 paid to the petitioner Davis. It is stated that certain items embraced in the farm expenditures were disallowed as expense deductions by the respondent, but no evidence was offered as to the specific items disallowed, nor the reasons for such action.

The petitioner Davis testified at considerable length with respect to the matter of expenditures, referring separately to each check. The total amount claimed as a deduction included three checks, one for $40, one for $12, and another for $86.66. The witness was unable to state for what purpose these checks were drawn, and no other testimony was offered to explain them. The deduction claimed also included numerous items representing advances made to tenants, which apparently merely constituted loans. No contention is made that these loans represent bad debts charged off within the taxable year, or otherwise constituted losses. We know of no authority for the allowance of such amounts as deductions for expenses. The disbursements which are admitted and otherwise clearly appear to be not allowable as deductions, aggregate $1,536.81, leaving $3,989.06 as the maximum amount allowable as a deduction on account of operating expense. This would result in a net profit from the operation of the farm in the amount of $1,306.82, without taking into consideration depreciation sustained on the buildings, implements and possibly other property, with respect to which no evidence was offered. From the evidence submitted, we are unable to say that the respondent erred in determining that the petitioners realized a gain of $20.48 from the operation of the farm instead of suffering the losses claimed. The action of the respondent on the joint issue is, therefore, approved.

The separate issues pertaining to each case will now be stated and considered. The petitioner Wakefield alleges that in computing the deficiency involved in his case, in addition to the joint issue above referred to, the respondent erred (a) in increasing interest received $1,426.23, (b) in changing a loss on the sale of an automobile from $500 to a profit of $525, and (c) in disallowing an expense of business in the sum of $1,857.50.

Concerning issue (a), the petitioner alleges that he reported in his original income-tax return, under the item " Total income from business or profession " in schedule (A), interest in the amount of $1,426.23; that the respondent treated this sum as a separate item and did not eliminate it in making his determination, thus taxing the petitioner twice on the same amount. The return, which is in evidence before us, shows that the petitioner reported as " Total income from business or profession " $4,381.60, and the revenue agent's report, offered in evidence by the petitioner and

which forms the basis of the respondent's determination, shows that said amount included interest in the sum of only $1,117.46, which sum was eliminated by the revenue agent as a part of the income reported in schedule (A), and the amount of $1,426.23, which the petitioner admits is the correct amount of interest received, was added to income under item (3) on page 1 of the return. Since the evidence offered by the petitioner affirmatively establishes that the determination of the respondent on this point is correct, his action is approved.

Issue (b) involves the question whether the petitioner made a profit or sustained a loss on the exchange of an automobile. In October, 1919, the petitioner purchased a Cadillac automobile for use in his business, at a cost of $2,700. In October, 1922, the petitioner bought a new Cadillac at a cost of $3,400 and turned in his old car at a value of $1,200 in part payment for the new car. The petitioner claimed a loss of $500 from the exchange, on the basis of depreciation sustained on the old car at the rate of 12 per cent per annum. The respondent disallowed the loss claimed, and, on the basis of depreciation at the rate of 25 per cent per annum, determined that the petitioner realized a profit of $525 on the transaction. Thus, it appears that the only question involved in this issue is, what was the correct rate of depreciation actually sustained on the old car. No evidence whatever was offered on this point, and, accordingly, the action of the respondent must be approved.

The remaining issue raised by the petitioner Wakefield calls in question the correctness of the respondent's action in disallowing a deduction claimed in the amount of $1,857.50 for business expense. During 1922, the petitioner lived in Shelbyville, but was engaged in the business of subdividing and selling real estate in the City of Louisville. He owned two automobiles, a Cadillac and a Dodge, and during 1922 also traded for a Buick. It is about 30 miles from Shelbyville to Louisville, and the petitioner made a round trip between the two places practically every day, using his automobiles for taking his prospective purchasers to and from the properties. He drove his automobiles about 20,000 miles during the year, and estimated that of the total mileage about 15,000 miles were for business purposes. He also used the cars for pleasure and family purposes, particularly on Sundays and at nights. The deduction claimed for business expenses included amounts expended for tires, gasoline, oil, traveling expenses, lunches, and entertainment of prospective purchasers of lots. The amount of the claimed deduction was arrived at from checks and other records which petitioner had in his possession at the time he made his return in 1922. The peti-

tioner was unable to estimate the amount expended for meals and entertainment of prospective purchasers, but stated that in his opinion the amount claimed was a reasonable deduction for business expenses.

The Revenue Act of 1921 provides, in section 215 (a) (1), that in computing net income no deduction shall in any case be allowed in respect of personal, living or family expenses.

The testimony of the petitioner shows that his allocation of that part of his total expenditures for 1922 which he claims as a deduction for business expenses includes, to some undeterminable extent, expenditures for personal and living expenses, which are not allowable as deductions from gross income. We have held that where the record does not afford a reasonably definite basis for the allocation of expenditures to business expense, the whole amount claimed must be disallowed. *W. H. Lawson*, 12 B. T. A. 1076, and prior decisions cited. The evidence presented here, we think, is insufficient, and the action of the respondent on this issue is approved.

The petitioner Davis alleges that, in addition to the joint issue, the respondent erred in computing the deficiency in his case, in disallowing a loss of $4,000 on an exchange of property.

In 1922 this petitioner was a dealer in real estate, buying and selling, and had been so engaged for many years prior thereto. In 1921 he purchased a house and lot in Shelbyville from one Hayes at a cost of $12,000. There was a loan on the property of $8,000, and petitioner paid $4,000 additional in cash or notes. He valued the lot at $4,000 and the house at $8,000 at the time of purchase. He did not live in the house, but rented it to a tenant for about six months. The petitioner bought this house for resale or to improve for a residence. After renting the property to a tenant for six months, he traded it to one Bond in 1922 for another frame house, paying Bond $7,000 cash difference. Petitioner considered the Bond property to be worth at that time $15,000, and acquired it both for the purpose of resale and to use as a residence. However, the petitioner has never offered the Bond house for sale, but used it as a family residence and continues to live there.

The petitioner contends that since he purchased the Hayes house in 1921 for $12,000, and traded it together with $7,000 cash in 1922 for the Bond property worth $15,000, he actually received the equivalent of only $8,000 for the $12,000 house, and thus sustained a loss on the transaction of $4,000. This alleged loss he claimed as a deduction in his return, which deduction was disallowed by the respondent. We are unable to concur in the petitioner's theory, or to conclude that the facts before us establish that he in fact sustained the loss claimed.

The petitioner testified that the Hayes property was worth $12,000 when he bought it in 1921, but offered no explanation of the reduction in value to $8,000, the exact amount of the mortgage loan against it, within a period of some six months. No direct evidence was offered to show the value of the Hayes house at the time the petitioner transferred it to Bond, but in his brief, the petitioner says: " The exchange in the present case was a bona fide transaction and the property received by the taxpayer had a sale value of $15,000.00. In other words, the petitioner exchanged a house at that time worth $8,000.00 and $7,000.00 in cash for the second house, and having paid $12,000.00 for it he thereby sustained a loss on the first house of $4,000.00."

Not only is there no explanation of the unusual depreciation in value of the Hayes property from $12,000 to $8,000 in approximately 6 months, but the petitioner's contention on this point suggests the pertinent query why Bond would trade his property worth $15,000 for $7,000 cash and another property worth only $8,000 against which there was a mortgage loan of $8,000. If these are the facts, as contended by the petitioner, and if the Bond property was unencumbered, then it is clear that he sold it to the petitioner for only $7,000 instead of $15,000. But whether or not there was a mortgage against the Bond house does not appear.

The evidence presented, it seems to us, warrants the assumption that the petitioner had an equity of $4,000 in the Hayes property, and that Bond had an equity of $11,000 in his property; that the petitioner exchanged his equity of $4,000, together with $7,000 cash, for Bond's equity in his property of $11,000. Such an assumption would not be inconsistent with the facts before us, and if it be correct, the petitioner sustained no loss on the transaction. However, whether the suggested assumption be correct or incorrect, the evidence adduced by the petitioner is in any event insufficient to show that the respondent erred in disallowing the deduction claimed, and his action, therefore, must be and is approved.

*In each case judgment will be entered for the respondent.*